UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JEFF BERNER, individually and on behalf of all others similarly situated,<br><br>v.<br><br>PHARMERICA LOGISTICS SERVICES, LLC | Case No. 3:23-cv-00142-CRS-RSE |

### BERNER'S UNOPPOSED MOTION TO APPROVE SETTLEMENT

**1. Summary.**

After months of litigation, detailed analysis of the facts and law, comprehensive damage analysis, mediation, and arm's-length negotiations between experienced counsel, Jeff Berner and PharMerica Logistics Services, LLC (collectively, the "Parties") settled this Fair Labor Standards Act (FLSA) lawsuit. *See* Ex. 1, Settlement Agreement ("Agreement"). Under the Agreement, Berner and those similarly situated pharmacists who elect to participate will receive 87% of their alleged unpaid wages without the need for further litigation, the risk of loss, or its attendant costs. The compromise reflected in the Agreement is reasonable, appropriate, and fair. Berner requests the Court approve it and authorize notice to the pharmacists so that they may decide whether to participate.

Under the Agreement, each similarly situated pharmacist will receive a notice containing detailed information about the settlement, the amount being offered, and how to obtain further information. Those that choose to join this case will receive their allocated settlement amount and release their wage and hour claims against PharMerica. Those who do not will retain all their rights and will remain in the same position as they were when they received the notice. Because the eligible pharmacists will benefit from learning about the Agreement and the option to participate, Berner requests the Court: (1) approve the Parties' Agreement including the notice and claims process

described therein; (2) and retain jurisdiction to ensure compliance with the Agreement and any related Court orders. Upon completion of the notice and claims process, the Parties will file a stipulation of dismissal. *See* Ex. 1 at § 14.

**2. Procedural Background.**

Berner filed this lawsuit in March 2023 (the "Lawsuit"). He alleges PharMerica paid its pharmacists the same hourly rate for all hours worked in a week, including hours worked after 40. Doc. 1 at PageID #: 1, ¶ 3. This practice is commonly referred to as "straight time for overtime" and it violates the FLSA because it fails to compensate hours worked after forty in a week at 1.5 times the employees' "regular rate" of pay. *See* 29 U.S.C. § 207(a).

PharMerica denied liability, asserting its pharmacists are exempt from the FLSA's overtime pay requirement. Doc. 14 at PageID #: 51, ¶ 76. After the Court denied PharMerica's motion to dismiss, the Parties exchanged relevant time and payroll records. The parties prepared for a motion for facilitation of a judicially approved notice under 29 U.S.C. § 216(b). This exchange led to a full-day mediation where the Parties negotiated with respect to a proposed collective action of:

> All pharmacists employed by PharMerica, from October 31, 2020, to October 31, 2023 … who were identified by Plaintiffs' Counsel as allegedly having been paid "straight time" for overtime as listed on Exhibit A to [the Agreement] ("Settlement Collective").

Ex. 1 at 1.

Using PharMerica's payroll records, the Parties identified 427 individuals (including Berner) allegedly fitting the proposed class definition. Ex. 1-A. Using objective records, Berner carefully calculated damages based on each employee's individual work history. The Parties then negotiated a settlement amount for each one. *Id.* Like the damage calculations, the settlement amounts are individualized to each member of the Settlement Collective based on their work history, including dates of employment, hours worked, and wages paid. The Parties then agreed (subject to the Court's approval) to a process for notifying the members of the Settlement Collective about the Agreement

2

and how to claim their individual share of the settlement funds. Ex. 1-B. Those who wish to participate need only return a simple Claim Form and consent to join the lawsuit.[1] *Id.* After the notice period, those members of the Settlement Collective who return their Claim Form will receive their share of the settlement. Ex. 1-A. Those that wish to retain all their rights can do so by simply not returning their Claim Form. Ex. 1. Those individuals will not receive a portion of the settlement, will not be bound by the Agreement, and will not be affected by any judgment of the Court. Ex. 1 at § 10(g)-(h).

**3.  The Court should approve the Parties' proposed notice.**

The FLSA's "collective action" provision allows an employee to bring an action for overtime compensation on "behalf of himself … and other employees similarly situated." 29 U.S.C. § 216(b). However, under the collective action process, only those workers who affirmatively choose to participate are part of the collective action. *Id.* A party asserting FLSA claims on behalf of others can seek judicial approval of a notice to potential plaintiffs who then decide for themselves whether to "opt-in" (i.e., whether to join) the collective action. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Unlike a Rule 23 class action, "conditional certification" of an FLSA collective action "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *see also, Rogers v. Webstaurant, Inc.*, No. 4:18-CV-74, 2018 WL 4620977, at *1 (W.D. Ky. Sept. 26, 2018). Instead, the "sole consequence of conditional certification is the sending of court-approved written notice to employees" who, in turn, only become parties if they elect to do so. *Id.* While the FLSA requires that opt-in plaintiffs be "similarly situated" to the lead plaintiff, it "does not address how other similarly situated employees might learn of the

---

[1] The Claim Form is merely an acknowledgment of the release and consent to join along with a contact information form and tax forms to process payment. Ex. 1-B.

lawsuit, and their right to decide whether to join in the action." *McClurg v. Dallas Jones Enterprises, Inc.*, No. 4:20-CV-201-RGJ, 2023 WL 8604177, at *2 (W.D. Ky. Dec. 12, 2023).

### A. Notice is appropriate for "similarly situated" employees.

A district court may "facilitate notice of an FLSA suit to other employees" when there is a "strong likelihood that those employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) (cleaned up). The strong likelihood standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*

Consistent with Supreme Court precedent, the Sixth Circuit confirmed the facilitation of notice is not a "certification"—conditionally or otherwise—of the collective action. *Clark*, 68 F.4th at 1009. Instead, "other employees become parties to the FLSA suit (as opposed to mere recipients of notice) only after they opt in[.]" *Id.* (citing 29 U.S.C. § 216(b)) (internal quotations omitted). Therefore, the due process concerns present in Rule 23 class actions are not present in FLSA collective actions because only those employees who affirmatively elect to join the lawsuit by opting-in are bound by decisions of the Court. *Id.*

### B. Second-step analysis is unwarranted in settled cases.

At the close of discovery, "courts must determine whether the opt-in employees and plaintiffs are actually similarly situated for the case to proceed to trial as a collective action." *McClurg*, 2023 WL 8604177, at *3. But this step is unnecessary when the case settles. *Cf. Berner v. PharMerica Logistics Servs., LLC*, 703 F. Supp. 3d 802, 808 (W.D. Ky. 2023) (citing *Clark*, 68 F.4th at 1008); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (even under Rule 23's stricter standards, "a district court need not inquire whether [a settlement class], if tried, would present intractable management problems, … for the proposal is that there be no trial"). Indeed, "*Clark* merely changed the factual showing necessary before a district court is justified in … facilitate[ing] notice of an FLSA action. It did not change the

4

post-notice standard for demonstrating whether other employees … are, in fact, similarly situated to the named plaintiff' for the purposes of trial. *Id.* at 809, n. 4.

In FLSA settlements, it is appropriate to simplify the process, for example, by sending a settlement notice together with settlement payments in "one step."[2] This is because collective actions under the FLSA are fundamentally different than class actions raised under Rule 23. *Genesis Healthcare Corp.*, 569 U.S. at 74. Neither the facilitation of notice, or the Court's approval of the Agreement's terms, binds anyone other than the Parties. Each worker, after receiving a "court-approved written notice[,]" will decide for themselves whether to "become parties to a collective action [settlement] by filing written consent with the court[.]" *Genesis Healthcare Corp.*, 569 U.S. at 75. Thus, the questions presented by an FLSA settlement are limited to whether the workers are similarly situated enough, and the settlement is fair enough, to warrant presentation to the putative collective action members.

As this Court has already observed, there is a "readily discernable collective of other employees who could be similarly situated to Berner: pharmacists who are employed by PharMerica and receive neither 'a true salary' nor are paid overtime." *Berner*, 703 F. Supp. 3d at 810. And while the parties clearly disagree regarding the merits, everyone agrees this group is similarly situated for the purposes of facilitating a settlement notice. Moreover, Berner's Counsel analyzed thousands of payroll records to identify which of PharMerica's pharmacists were allegedly paid straight-time-for-overtime and to calculate their individualized damages. *See* Ex. 1-A. As part of months of negotiation, including a full

---

[2] *See, e.g., Hawthorne v. Podium Corp.*, Inc. No. 2:24-cv-00196-HCN, at ECF 15 (D. Utah March 22, 2024) (allowing "one-step" method for distribution of settlement notice and settlement payments); *Stenulson v. ROI Solutions, LLC,* No. 2:20-cv-000614, at ECF 149 (D. Utah Oct. 11, 2022) (same); *Abernathy v. Molina Healthcare, Inc.,* No. 1:20-cv-00042-DBP, at ECF 49 (D. Utah Nov. 22, 2021) (same); *Osman v. Grube, Inc.*, 3:16-CV-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (same); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision."); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014) (same).

day mediation, the Parties reached an Agreement that would provide the 427 members of the Settlement Collective with notice explaining how they can opt-in to this case and receive their share of the settlement, should they choose to do so. Ex. 1.

**4. The Court should approve the Parties' Agreement.**

"Although the Sixth Circuit has never definitively answered the question of whether court approval is required for FLSA settlement agreements, district courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 964–65 (E.D. Mich. 2021) (collecting cases). However, other courts, including those in this District, do not require approval. *See, e.g.*, *Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635, 643 (W.D. Ky. 2022) ("Faced with a statute that doesn't require court approval before dismissal, and a Rule that presumes the opposite, the Court concludes that FLSA is not an "applicable federal statute under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest."). Courts that do not require approval note their preference for the voluntary resolution of litigation through settlement, the strong public policy in favor of settlement agreements, and that courts should approach such agreements with a presumption in their favor. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999). But regardless of whether it is required, it clear that courts can approve the settlement of FLSA collective claims. *York v. Velox Express, Inc.*, No. 3:19-CV-00092-CHL, 2022 WL 20804127, at *2 (W.D. Ky. Mar. 25, 2022) (noting circuit split over whether court approval of FLSA settlements is required) (citing *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

Here, the parties agreed to seek judicial approval of the Agreement as written. Ex. 1 at § 4; *Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.").

### A. The standard for FLSA settlement approval.

A district court should approve an FLSA settlement reached in contested litigation when it represents a fair and reasonable resolution of a bona fide dispute between the parties. *Lynn's Food Stores, Inc.*, 679 F.2d at 1352 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Athan*, 523 F.Supp.3d at 965 (the court should determine whether the parties "were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented."); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014) (existence of bona fide dispute serves as a guarantee the parties have not manipulated the process to avoid FLSA obligations).

"[T]o determine whether a proposed FLSA settlement is fair and reasonable, courts consider, as applicable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." *Athan*, 523 F. Supp. 3d at 965. "In making a fairness determination, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Netzel v. W. Shore Grp., Inc.*, No. 16-CV-2552 (RHK/LIB), 2017 WL 1906955, at *2 (D. Minn. May 8, 2017).

### B. The proposed agreement resolves bona fide disputes.

A settlement resolves a bona fide dispute "if it reflects a reasonable compromise over issues actually in dispute …" *Netzel,* 2017 WL 1906955, at *2; *King v. Raineri Constr., LLC*, 2015 WL 631253, at *1 (E.D. Mo. Feb. 12, 2015). "The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Netzel,* 2017 WL 1906955 at *4; *see also Grahovic v. Ben's Richardson Pizza Inc.*, 2016 WL 1170977, at *2 (E.D. Mo. Mar. 25, 2016). "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by

7

coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Hous. Auth. of City of El Paso*, No. EP-10-CV-109-KC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011).

### i. Bona fide disputes exist regarding the salary basis test.

The Parties' core dispute is whether PharMerica paid its pharmacists on a "salary basis" under the FLSA. The FLSA generally requires employers to pay overtime compensation to employees who work more than forty hours a week. 29 U.S.C. § 207(a)(1). The FLSA also carves out exemptions. 29 U.S.C. § 213. These exemptions include "any employee employed in a bona fide executive, administrative, or professional capacity." *Id.* at § 213(a)(1). But to qualify for exemption, the employer must prove certain duties and salary requirements. *Manteuffel v. HMS Host Tollroads, Inc.*, No. 22-3856, 2023 WL 5287722, at *2 (6th Cir. Aug. 17, 2023). Traditionally, an employee is paid on a "salary basis" if he is paid a "weekly salary" (in excess of the regulatory minimum) that is "not subject to reduction because" the employee works less than a full week. *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 51 (2023). Hourly workers, however, may nonetheless qualify for exemption, if the employer can establish "a guarantee of weekly payment approximating what the employee usually earns." *Id.* at 55-6 (citing 29 C.F.R. § 604(b)). The issue is a complex one. *See, e.g., Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 716 (5th Cir. 2024) (disagreeing in part with *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023)); *Alvarez v. NES Glob. LLC*, 709 F. Supp. 3d 284 (S.D. Tex. 2023), *clarified*, No. 4:20-CV-01933, 2024 WL 4309989 (S.D. Tex. Sept. 26, 2024); *Richardson v. NES Glob., LLC*, No. CV H-20-223, 2024 WL 3852258, at *3 (S.D. Tex. Aug. 16, 2024) (rejecting *Pickens v. Hamilton-Ryker It Sols., Inc.*, No. 3:20-CV-00141, 2024 WL 1337185 (M.D. Tenn. Mar. 28, 2024).

Berner alleges PharMerica pays its pharmacists the same hourly rate for all hours worked, including hours worked after 40 in a week. Doc. 1 at PageID #: 1, ¶ 3. Commonly referred to as "straight time for overtime," Berner alleges PharMerica's pay plan violates the FLSA because

8

employees are not paid at least 1.5 times their "regular rate" of pay for hours beyond 40 in a workweek. *See* 29 U.S.C. § 207(a). PharMerica, however, vehemently disagrees. PharMerica alleges it paid its pharmacists on a salary basis because it guaranteed a "weekly payment approximating what the employee earns" under 29 C.F.R. § 604(b). Thus, there is a bona fide dispute between the Parties.

### ii. Bona fide disputes exist over PharMerica's good faith defense.

The parties also dispute whether PharMerica's pay plan was made in good faith. Doc. 14 at PageID # 51, ¶ 78. An employer can avoid an award of liquidated damages by showing it acted in good faith and with reasonable grounds for believing that it was not in violation of the FLSA. *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004); 29 U.S.C. § 260. To show good faith, the employer must have attempted to ascertain the FLSA's requirements, but nonetheless proceeded under an objectively reasonable, although mistaken, interpretation of the FLSA. *Solis v. Min Fang Yang*, 345 F. App'x 35, 39 (6th Cir. 2009). PharMerica, of course, contends it did not violate the FLSA at all. But if it did (which it denies), PharMerica points to its offer letters and other documents as reflecting an intention to pay on a salary basis. While Berner disagrees with the conclusion to be drawn from PharMerica's evidence, the Parties are clearly in dispute.

### iii. Bona fide disputes exist over whether PharMerica acted willfully.

The parties further dispute the applicable statute of limitation. Generally, FLSA claims are limited to a 2-year statute of limitations. 29 U.S.C. § 255. However, if Berner could satisfy his burden to demonstrate that PharMerica acted willfully, the statute of limitations extends to 3 years. *Id.* An employer commits a willful violation if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002).

PharMerica disputes willfulness, claiming that any violation was merely a mistake and not intentional or reckless. It also points to the fact it had not been subject to any investigations by the

Department of Labor. *See Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999) (prior Department of Labor investigations showed employer was on notice that its practices violated the FLSA). Thus, even if an FLSA violation occurred (which, again, PharMerica disputes), there is a bona fide dispute as to whether any violation of the FLSA was willful.

  **iv. The Agreement is a compromise of several complex, bona fide disputes.**

  The Parties fully analyzed the pertinent issues and assessed the strengths and weaknesses of the claims and defenses. The Agreement was reached after arm's-length negotiations that included mediation before a well-respected mediator who specializes in wage and hour disputes.[3] The parties worked to resolve various complex, disputed issues, including salary basis, good faith, and willfulness. Had the parties not settled, there would undoubtedly be extensive future work to come, including pretrial motions, trial, and possibly appeals. Accordingly, the parties engaged in significant work, recognized the risks if this case were not settled, and appreciated that settlement represents a compromise in favor of certainty.

  Finally, both Berner and his Counsel believe the Agreement is in the best interest of the Settlement Collective. The Agreement before the Court is the result of a *bona fide* and contested dispute where serious questions of fact exist. Without the parties' willingness to engage in bona fide settlement discussions, this case could not have been settled.

**5. The Agreement is a fair and reasonable compromise.**

  "There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). This is particularly the case when "th[e] settlement is the negotiated result of an adversarial proceeding[.]" *Id.*

---

[3] https://milesmediation.com/neutrals/michael-russell/

The Parties' Agreement provides an excellent recovery that is worthy of presentation to the members of the Settlement Collective. The damages under the FLSA's general limitations period—calculated by reference to objective, regularly kept employment records—are approximately $1,360,000. The Agreement provides Berner and the Settlement Collective with a recovery of $1,185,000 which is approximately 87% of their alleged unpaid wages. Ex. 1-A. Considering the average class action recovery is only 7-11%, this is a fantastic result. *Athan*, 523 F. Supp. 3d at 966.

The attorneys who negotiated the Agreement have vigorously prosecuted and/or defended FLSA claims for decades. Counsel for all parties have considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and in this case were particularly well informed as to the facts and circumstances of the Action after conducting discovery and analyzing relevant payroll records. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (opinions of counsel supported settlement approval when based on counsel's "comprehensive knowledge of the facts and legal issues"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (cleaned up); *see also Austin v. Pa. Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced … counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa.

11

1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

### C. The Agreement is not the result of fraud or collusion.

The Agreement resulted from arms-length negotiations among experienced counsel and included a day-long mediation before highly-regarded mediator Michael Russell. The settlement was reached after the Parties engaged in discovery (including comprehensive payroll data and pay policy information) and after approximately 7 months of settlement negotiations. *See Graybill v. Petta Enterprises, LLC*, No. 2:17-CV-418, 2018 WL 4573289, at *4 (S.D. Ohio Sept. 25, 2018) (approving FLSA settlement where there was a "lack of evidence of fraud or collusion in reaching the settlement" where parties attended "full-day mediation with an outside, experienced mediator"); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010) (approving settlement that was reached after the parties engaged in "arms-length negotiation, following extensive investigation and discovery."); *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-CV-18, 2017 WL 4390294, at *2 (S.D. Ohio Oct. 3, 2017)("The parties' divergent positions would have required judicial resolution had a settlement not been reached through many months of arms-length negotiation between competent counsel. Thus, the settlement is free from indicia of fraud and collusion.").

### D. The issues are complex and likely to require lengthy litigation.

FLSA actions like this one require a higher degree of preparation and skill to litigate than other cases. *See, e.g., Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-CV-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) ("[T]he Court notes that wage and hour class and collective actions, such as this one, are inherently complex[.]"). They are "time-consuming" and expensive. *See, e.g., Yorba v. Barrington Sch., LLC*, No. 2:21-CV-691, 2022 WL 2436952, at *6 (S.D. Ohio July 5, 2022). Most FLSA cases are, therefore, prosecuted by specialized practitioners like Berner's Counsel. The salary basis issue in this case would likely require extensive briefing involving the interaction of several regulations as well as

the impact of several cases interpreting them. *See, e.g.*, *Helix Energy Sols. Grp., Inc.* 598 U.S. 39; *Gentry*, 102 F.4th 712; *Wilson*, 80 F.4th 1170; *Alvarez*, 709 F. Supp. 3d 284; *Pickens,* 2024 WL 1337185, at *5. Accordingly, the Agreement is reasonable because it avoids the risk, burden, and time associated with further litigation.

### E. Discovery was adequate.

Discovery is sufficient, "so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Graybill*, 2018 WL 4573289, at *5. As the Court is aware, the Parties disputed the timing, amount, and extent to which discovery should be conducted. *See, e.g., Berner v. PharMerica Logistic Servs. LLC*, No. 3:23-CV-00142-CRS, 2023 WL 5538300, at *2 (W.D. Ky. Aug. 28, 2023) (detailing the Parties' dispute over PharMerica's request for a protective order); Docs. 36, 41, 43 (filings related to Berner's motion to compel discovery); Docs. 50, 52, 53 (filings related to PharMerica's motion to stay discovery). Nonetheless, the Parties exchanged thousands of relevant payroll records reflecting all the hours worked by, and wages paid to, the members of the Settlement Collective. Given the claims in this case turn, in large part, on those records, this information is sufficient to allow the Parties to evaluate the claims, defenses, and damages.

### F. Likelihood of success on the merits is uncertain.

As discussed in § 4(B)(i), *supra,* the Agreement reflects a compromise of the salary basis issue, that if lost, would preclude any recovery. *See, e.g., Helix Energy Sols. Grp., Inc.* 598 U.S. 39 (finding a day rate is not payment on a salary basis); *Wilson*, 80 F.4th 1170 (finding base salary plus additional amounts met the salary basis test); *Alvarez*, 709 F. Supp. 3d 284 (day rate is not payment on a salary basis despite an alleged guaranteed retainer). Perhaps the simplest way to illustrate the risk of loss is to compare how the Fifth Circuit Court of Appeals and a judge in the Middle District of Tennessee evaluated the identical pay plan. In one case, *Gentry*, the Fifth Circuit held Hamilton-Ryker violated the salary basis test because its alleged "salary" was equal to just 8 hours' pay and most of the employees' weekly pay

was tied to hours worked. *See Gentry*, 102 F.4th 712 (alleged salary of 8 hours plus hourly pay for hours in excess of 8 did not satisfy the salary basis test). Nonetheless, newly-appointed Judge Campbell held the identical pay plan met the salary basis test. *Pickens,* 2024 WL 1337185 (finding the same plan in *Gentry* met the salary basis test). While *Pickens* is now on appeal (with the United States Department of Labor, as amicus curiae, urging its reversal), the reality is that workers pursuing such claims face litigation risk.

The Agreement, if approved, provides excellent recovery without the significant risk of loss, time, and expenses that attend continued litigation over the salary basis issue.

### G. Berner and his Counsel approve the Agreement.

Again, based on their knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour collective actions, Berner's Counsel believes the Agreement constitutes a fair and reasonable compromise. This factor supports approval of the Agreement. *Graybill*, 2018 WL 4573289, at *6 ("The Court gives deference to [counsel's] experienced opinion that the Settlement Agreement should be approved.") (citing *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)). Berner agrees. *See* Ex. 1 at 14. Considering the foregoing, the Court should approve the Parties' Agreement.

### H. The reaction of absent class members is not relevant in an FLSA collective.

"In light of the fact that this is an opt-in class action, there are no absent class members[.]" *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 WL 10715595, at *7 (N.D. Ohio Aug. 10, 2009) (cleaned up). Rather, only those pharmacists who decide to join the collective will be bound by the Agreement. Ex. 1 at § 10. Therefore, this factor is not relevant.

### I. The public interest favors settlement

The fact the Agreement: (1) resolves what would be further protracted litigation, and (2) provides relief for individuals who, financially or otherwise, would be unable to bring their claims

14

individually, also supports a finding that the Parties' settlement of this FLSA collective action promotes the public interest. *See, e.g.*, *Graybill*, 2018 WL 4573289, at *7 (finding this factor favored approval because it was a reasonable compromise and "provides relief for individuals who may not be able to bring these claims on their own"); *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) ("Given the uncertainties surrounding the possible trial in this matter, the certainty and finality that come with settlement also weigh in favor of a ruling approving the settlement. Such a ruling promotes the public interest in encouraging the settlement of litigation."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *8 (S.D. Ohio May 30, 2012) ("Generally speaking, the public interest favors the settlement of class action litigation.").

**6. While reasonable, approval of the negotiated attorneys' fee is not requested or required.**

As noted above, there is some dispute as to whether settlement approval is required at all in FLSA cases. *Askew,* 620 F. Supp. 3d at 638-43. But regardless of that split, "any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees[.]" *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019); *Bernardez v. Firstsource Sols. USA, LLC*, No. 3:17-CV-613-RGJ, 2022 WL 1156972, at *6 (W.D. Ky. Apr. 19, 2022) (same). After all, the FLSA treats the "merits of an FLSA claim"—what the employees themselves recover—and attorney's fees "as distinct." *Barbee*, 927 F.3d at 1027 (citing 29 U.S.C. § 216(b)). Thus, "regardless of whether we read the statute as requiring approval for FLSA settlements, we do not read it as requiring approval of settled attorney fees." *Id.*

Here, the Agreement provides separately for negotiated attorney's fees of $800,000 and $21,000 in costs. Ex. 1 at § 6. Because each potential member decides for themselves whether to participate, no worker will participate in any aspect of the settlement without their express consent. Those who elect not to participate retain all their rights (having paid nothing out of pocket or out of their potential recovery). And those who choose to participate will receive approximately 87% of their

15

unpaid wages (and owe nothing to Berner's attorneys from their recovery). Given the substantial recovery obtained for the Settlement Collective, "any skepticism the Court might have about approving [fees] is overcome by the benefit provided to Plaintiff and the collective," as well as the "admonition that courts should give a certain amount of deference when reviewing agreed attorney's fees in FLSA settlements." *Webb v. S. Aluminum Mfg. Acquisition, Inc.*, No. 1:19-CV-1059, 2022 WL 801559, at *4 (W.D. Ark. Mar. 15, 2022).

Even when requested (and here, it is not), any review "requires a certain level of deference ... to the parties' settlement agreement" and "is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. Ok Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). Otherwise, the court's role is generally limited to ensuring the plaintiffs were not damaged by a conflict of interest between plaintiffs and their counsel. *Barbee*, 927 F.3d at 1028; *see also Harrington et al v. AT&T Services, Inc.*, Case. No. 5:20CV00770 (W.D. Tex. Oct. 24, 2022) (under "the procedural posture here allows for the parties to settle the mandated [FLSA] attorney fees and costs without judicial approval"). But here, any employees who choose to participate will be treated fairly and will receive approximately 87% of their unpaid wages (and will not pay Berner's Counsel anything from their recovery).

Therefore, while the fee is certainly reasonable given the robustness of the results obtained for members of the Settlement Collective who choose to accept them, court approval of the negotiated fee is neither necessary nor requested.

**7. The Service Payment to Berner is reasonable.**

The Agreement provides a $6,000 service payment to Berner to acknowledge his time, effort, and risk expended in advancing this litigation and achieving a successful settlement, as well as in exchange for a release of additional claims. Ex. 1 at §§ 1, 15. Such awards are commonplace in actions where the plaintiff put off the resolution of their own claims for the benefit of others. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class

16

representatives for their often extensive involvement with a lawsuit."); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (approving a service payment and noting they are typical in the Sixth Circuit). Service payments are well-suited in employment litigation because plaintiffs assume the risk that future employers may look unfavorably upon them for filing suit against former employers.

The Service Payment is decidedly skimpy in comparison to the amount that would be available to the Settlement Collective (equal to approximately ½ of 1%).[4] It is also well within the range of those approved by courts in this judicial circuit. *See, e.g., Waggoner v. U.S. Bancorp*, No. 14 Civ. 1626, 2016 WL 7474408, at *4 (N.D. Ohio Dec. 29, 2016) (approving service payments of $10,000 each for the named plaintiff and discovery opt-in plaintiffs); *Heibel v. U.S. Bank Nat'l Ass'n*, No. 11 Civ. 00593, 2014 WL 12591848, at *2 (S.D. Ohio May 21, 2014) (approving $5,000 each to a group of six named plaintiffs and $2,000 each to a group of 15 class representative plaintiffs); *Kritzer*, 2012 WL 1945144, at *18 (approving $15,000 to the named plaintiffs in FLSA settlement); *Dillworth*, 2010 WL 776933, at *7 (approving named plaintiffs $6,000 and $4,000 for their service to the FLSA collective). Berner's efforts in advancing this risky litigation to successful completion, as well as his broader release of employment claims, merits the modest $6,000 Service Payment.

## 8. Conclusion.

The Agreement is fair, reasonable, adequate, and in the best interests of the Parties and the Settlement Collective. It was reached following months of discovery, analysis, and negotiation by experienced wage and hour counsel. Because of the various defenses asserted by PharMerica and the possibility that PharMerica could have eliminated or limited Berner's claims, including those related to willfulness, liquidated damages, and unpaid overtime, the Agreement represents a fair compromise of *bona fide* disputes. Moreover, given the strong likelihood of risky and expensive continued litigation,

---

[4] $6,000 / $1,185,000 = .00506 (or .5%).

a compromise prevents all parties from incurring the additional costs and delay associated with trial and possible appeal.

The Parties hereby request the Court: (1) approve the Parties' Agreement; (2) authorize the Parties to issue their proposed notice; (3) permit the Parties to proceed with the administration of their Agreement; (4) authorize CPT Group, Inc. to serve as claims administrator; and (5) retain jurisdiction for purposes of ensuring compliance with the Agreement and any related Court orders. Ex. 1 at §§ 4, 9. Upon completion of the notice and claims process, the Parties will file a stipulation of dismissal (though, in the interim, this matter could be closed for statistical purposes). *Id.* at § 4.

Dated: November 27, 2024.                    Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ David I. Moulton**
_____
Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Richard M. Schreiber
Texas Bar No. 24056278
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On November 27, 2024, I served this document on all registered parties through the Court's ECF system.

**/s/ David I. Moulton**
_____
David I. Moulton

## CERTIFICATE OF CONFERENCE

PharMerica does not oppose this motion.

**/s/ David I. Moulton**
_____
David I. Moulton