UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:23-CV-00142-CRS

JEFF BERNER, individually and on behalf of     PLAINTIFF
all others similarly situated

v.

PHARMERICA LOGISTICS SERVICES, LLC     DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Unopposed Motion to Approve Settlement (DN 73). The parties seek the Court's approval to settle this matter not only on behalf of the named plaintiff, Jeff Berner, but also on behalf of all others he has deemed to be similarly situated to himself.[1] More specifically, they seek to settle claims for all pharmacists employed by Defendant who were paid "straight time for overtime" in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"). They also seek to settle "all class claims" brought by Berner pursuant to the Ohio Minimum Fair Wage Standards Act (the "OMFWSA"), Ohio Rev. Code Ann. § 4111.03(a). Berner's OMFWSA claims are based on the same essential facts.

According to Berner, he and at least 427 other pharmacists whom Defendant employed were never paid for overtime – weekly hours worked over 40 – at the appropriate rate of 1.5 times their regular hourly rate. Despite Berner's depiction of a lengthy process undertaken by his attorney to identify 427 "similarly situated" pharmacists, a process made feasible by Defendant's

---

[1] On July 3, 2024, the parties filed a Joint Status Report, advising the Court that this case had been settled. There was no indication of a settlement on behalf of anyone other than the named plaintiff, Jeff Berner. Accordingly, the Court dismissed this action with leave to reinstate it should the settlement not come to fruition. *See* 09/17/2024 Order, DN 67. Instead of moving to reinstate this action, Berner simply filed his Motion to approve a purported settlement on behalf of the collective he has identified (DN 73) (the "Motion"). The Motion is silent as to reinstatement. Accordingly, the Court will reinstate this case *sua sponte* for the purpose of resolving Berner's Motion.

supply of payroll records, the Motion is both premature and improper. For those reasons, the Court will deny it.[2]

Like the parties to this action, this Court is bound by the Sixth Circuit Court of Appeals' decision in *Clarke v. A&L Homecare and Training Center, LLC*, 65 F.4th 1003 (6th Cir. 2023). *Clarke* sets out a specific process by which the parties and the Court are to proceed in a would-be FLSA collective action. Despite their awareness of *Clarke*, the parties to this case have not heeded its dictates. As a result, they have not settled any FLSA claims on anyone's behalf other than, perhaps, Jeff Berner who is the only plaintiff to this action. *Clarke* makes clear that the original, named plaintiff to a putative FLSA collective action does not act in a representative capacity. Thus, Berner cannot settle his FLSA action on behalf of anyone other than himself. To the extent that Defendant wishes to settle the supposedly viable claims of the putative 427 FLSA plaintiffs and to the extent that Berner's counsel wants to represent them, those would-be plaintiffs must first choose to join in this action. *Clarke*, 68 F.4th at 1009 (FLSA collective action is not representative; all putative plaintiffs must affirmatively choose to join the case). Prior to giving those 427 people that choice, this Court must be satisfied that they are eligible to join this lawsuit. They can be deemed eligible to opt into this case only if Berner demonstrates "a strong likelihood" that they are in fact similarly situated to him:

> . . . we hold that for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a "strong likelihood" that those employees are similarly situated to the plaintiffs themselves.

*Id.* at 1011. Generally, plaintiffs accomplish this end by filing a motion which seeks court-facilitated notice. In this case, Berner never filed such a motion much less made the requisite

---

[2] To the extent Berner has reached a settlement on his own behalf, the Court expresses no opinion as to any such contract's enforceability or fairness.

showing. Moreover, a decision to permit notice to issue is "provisional" in nature. *Id.* at 1010-11. The Court must render a final decision on the matter before those persons who opt in may be officially joined in the lawsuit. *Id.* at 1011.

Presently, there is no evidence before this Court that would permit it to find a strong likelihood that the 427 putative plaintiffs are similarly situated to Berner. This requisite requires "a showing greater than the one necessary to create a genuine issue of fact" but something "less than the one necessary to show a preponderance." *Id.* "The very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" *Id.* at 1012 (quoting *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989)). This "strong likelihood" of similarity can be satisfied by proof of a single FLSA-violating policy or conduct in conformity with such a policy. While Berner has alleged that Defendant violated § 207(a)(1) of the FLSA with respect to his list of 427 other pharmacists, there is no record evidence before the Court which establishes a strong likelihood of such numerous violations. Nor is there any proof that Defendant agrees to the alleged violations or at the very least agrees that it has exposure with respect to the other putative 427 claimants.

Moreover, while the requisite proof may come in the form of one or more affidavits, none is present here. That is, proof by way of affidavit or otherwise that Defendant had a policy by which it paid pharmacists like Berner "straight time for overtime" or proof of conduct by Defendant that conformed to such a practice may prove an FLSA violation as to all members of the proposed collective. However, Berner must make a strong likelihood showing, *i.e.* a strong likelihood that these 427 putative plaintiffs (1) are pharmacists who worked to provide services to

3

Defendant; (2) they were not paid 1.5 times their normal hourly rates when they worked in excess of 40 hours per week; thus, they were subjected to the same challenged pay policy alleged in Berner's Complaint; and (3) their claims are not or should not be time-barred. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("plaintiffs are similarly situated when they suffer from a single, FLSA—violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."); *Clarke*, 68 F.3d at 1012 ("a limitations defense is likewise a defense like any other for purposes of determining similarity. Hence the district court should consider the parties' respective showings on that issue when making its notice determination.").

Generally, once a plaintiff makes the requisite "strong likelihood" showing, the parties tender a proposed opt-in notice for the court's approval. As directed by *Clarke*, any such notice cannot constitute the solicitation of claims. *Clarke*, 68 F.4th at 1010 (court's facilitation of notice must not 'in form or function' resemble 'the solicitation of clams'") (quoting *Hoffmann-La Roche*, 493 U.S. at 174). Once an approved notice is in place, plaintiffs are free to issue it by mail and/or e-mail, and, of course, are free to use the services of any third-party vendor they deem fit in order to do so. A typical opt-in period is 60 days from the date the notices are issued. Putative plaintiffs who opt in are free to engage the attorney who represents the original, named plaintiff or counsel of their own choosing.

Typically but not always, a period of discovery would follow, one geared toward developing a record which allows the district court to make the requisite ***conclusive*** determination as to whether the amenable, putative plaintiffs are in fact similarly situated to Berner. Such a record is necessary because a conclusive finding is necessary: "'other employees' become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in and the district court

4

determines—*not conditionally but conclusively*—that each of them is in fact 'similarly situated' to the original plaintiffs." *Id.* at 1009 (citations omitted) (emphasis added). In other words, "the notice determination has zero effect on the character of the underlying suit." *Id.* At the same time, "it is possible that representative testimony . . . could be used to facilitate the presentation of proof of FLSA violations." *O'Brien*, 575 F.3d at 585. Such representative proof is particularly apt in cases where the alleged FLSA violation is based on one unlawful policy which allegedly affected quite a lot of employees, such as the one alleged here of paying straight time for overtime. *Id.*

Next, once any and all would-be plaintiffs are joined and an FLSA collective action is formed, then such party plaintiffs become free to settle their claims as they may choose. That is, they then have "'the same status in relation to the claims of the lawsuit'" as does the original, named plaintiff. *Clarke*, 68 F.4th at 1009.

Finally, this Court finds that settlements of FLSA claims are matters of private agreement that do not require a court's approval and further finds that it does not have the authority to approve FLSA settlements. For this reason, a motion to approve the settlement of an FLSA claim – collective or otherwise – should not be brought. On these points, the Court finds the rationale of *Gilstrap v. Sushinati LLC*, No. 1:22-cv-434, 2024 WL 2197824 (S.D. Ohio May 15, 2024) persuasive. In short, the text of the FLSA does not require court approval prior to settlement or dismissal nor is there binding case law to that effect. Also for the same reasons set out in *Gilstrap*, this Court likewise "concludes that it lacks the authority to approve or reject FLSA settlements." *Id.* at *7. Furthermore, the Court agrees that Rule 41 of the Federal Rules of Civil Procedure governs the dismissal of FLSA claims. *Id.* at *13. And, as with other civil actions, parties who dismiss FLSA claims as a result of a settlement agreement are "free to ask the Court to retain

5

jurisdiction over the settlement agreement in connection with that dismissal." *Id.* at *1 (citing *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375 (1994)).

Berner's class action claims under the OMFWSA must also be addressed. Berner styled his Complaint under the OMFWSA as a putative class action, but he has never moved for class certification. His tendered settlement agreement focuses a reader's attention on his FLSA action, using defined terms that draw attention to those claims. Yet, his tendered settlement agreement also proposes a settlement of "all class claims pursuant to Federal Rule of Civil Procedure 23 under the OMFWSA or otherwise—that have been or could have been asserted in the Lawsuit." DN 73-1 at ¶ 2, PageID# 337; *see also id.* at ¶ 12, PageID# 342 (purporting to release all claims under the OMFWSA on behalf of himself and "all Settlement Collective Members"). To the extent that Berner is purporting to seek approval to settle "all class claims," his Motion is equally premature and improper. *See* FED. R. CIV. P. 23(e). While Rule 23 permits settlement of "a class proposed to be certified for purposes of settlement," Berner has not followed Rule 23's requisites for doing so. Instead, it appears to this Court that Berner, and to the extent Defendant agrees, he and Defendant seek an expedited process that runs afoul of Rule 23.

Berner is, like all plaintiffs, the master of his Complaint. He chose to bring his case as collective action under the FLSA and as a class action under Fed. R. Civ. P. 23. Now he would like to settle those claims and expeditiously collect. While the Court appreciates what appears to be hard work here, neither Berner nor Defendant nor this Court may disregard *Clarke* and Rule 23. Berner's Motion will be denied.

The Court will enter a separate Order consistent with this Memorandum Opinion.

December 16, 2024



Charles R. Simpson III, Senior Judge
United States District Court